This case was before the Court on the plaintiffs' appeal, at February Term, 1885, but not upon the points presented in the present transcript.
The case is simply this: William A. Owens, the ancestor of the plaintiffs, his heirs-at-law, in his lifetime entered into an agreement with the defendant Uriah H. Phelps, for the purchase of the tract of land described in the complaint, for which, in 1857, he gave his three several notes, payable at one, two and three years, each for the sum of $600, and took from the vendor his bond to make title when the purchase money was paid, entering at once into possession. He paid off two of the notes in full, and a part of the other, previous to his death in the (287) year 1859. Letters of administration on his estate thereafter issued to his brother, A. J. Owens, who paid the residue due on the third note. Unable to obtain title from Phelps to the heirs-at-law of the intestate, the administrator attempted to rescind the contract made with Phelps, and accepted from him notes in return for the purchase money paid, and in place of the obligation to convey the land.
In 1868, Phelps having resumed possession, sold and conveyed one moiety of the land, for the consideration of $1,300, to the defendant J. Harvey Sparks, and mortgaged the other moiety to the defendant F. M. Phillips, each of whom, it is alleged in the complaint, took the title with notice of the facts upon which the plaintiffs' equity rests. The action seeks to have the attempted rescission of the agreement and what was done under it, declared a nullity, and the heirs-at-law, upon whom the intestate's equitable estate descended, reinstated in all the rights they before possessed under and by virtue of the title bond.
The defendants, who answered, deny that they or either of them, had such notice before and when the deeds were made to them, and defend against the present demand, by alleging that the plaintiffs have ratified and made valid the rescinding contract made by the administrator, and have elected take the money paid by Phelps in lieu of the land; and further, that the contract of sale of the widow and heirs to Fannie Williams, whereby their several interests have vested in her, and she has become sole proprietor, is champertous and void.
The issues tendered by the plaintiffs, to be submitted to the jury, were as follows: *Page 261 
"1. Did J. H. Sparks have notice, of plaintiffs' equity in the lands in controversy, as alleged in plaintiffs' complaint, before his purchase from Uriah H. Phelps?
"2. Did F. M. Phillips have notice of plaintiffs' equity in the lands in controversy, as alleged in plaintiffs' complaint, before his purchase from Uriah H. Phelps?
"3. Had the purchase money agreed to be paid by W. A. Owens (288) to Uriah H. Phelps for the lands in controversy been paid before the commencement of this action?"
The following issues were tendered by the defendants, and submitted to the jury, after objection by plaintiffs, and plaintiffs excepted.
"4. Did the plaintiffs, the widow and heirs-at-law of W. A. Owens, or either of them, ratify the rescission of the contract between U. H. Phelps and W. A. Owens, as alleged by defendants?
"5. Was the contract of sale from the widow and heirs to Fannie Williams champertous?"
The jury returned an affirmative response to the first three issues; to the fourth, "Yes, all of them," and answered the fifth in the negative.
The Court instructed the jury at length upon all the issues, to which no exception was taken, except to the charge in reference to the fourth issue. Upon this the Court said to the jury: "I will present you this issue, with the instructions asked for by both parties, for there is no great difference between them, as to the law bearing upon the matter."
These instructions, presented by the plaintiffs, were as follows:
"That the attempted rescission of this contract by A. J. Owens, as the administrator of W. A. Owens, and Uriah H. Phelps, was without authority of law, and a nullity so far as the heirs of W. A. Owens were concerned, and did not affect them nor their rights to the land in controversy, unless they afterwards ratified and affirmed the same; and nothing they said or did before they were twenty-one years of age, or after they were married (if girls), and while their husbands were still living (unless the husband assented thereto with full knowledge of the facts, or with knowledge of such facts as ought to have put him upon inquiry), could ratify the attempted rescission of A. J. Owens and Uriah H. Phelps.
"That defendants allege, that the heirs of W. A. Owens have (289) ratified the attempted rescission of the contract by A. J. Owens, as the administrator of W. A. Owens, and Uriah H. Phelps, and, as they have made the allegation, it devolves upon them to prove that it is true, or it cannot benefit them in this action; and to do this, they must prove to your satisfaction that the heirs of W. A. Owens, after they arrived at the age of twenty-one years, and when not under coverture, (that is, if they are girls, it must be after they are twenty-one years of *Page 262 
age and before they are married), that they expressly ratified this attempted rescission, or that they have done some act inconsistent with their rights to enforce the contract made by Uriah H. Phelps to sell said land to their father, W. A. Owens, and that they knew when they did said act, that they had the right to enforce said contract, and that said act would prevent them from afterwards doing so and if defendants have not so satisfied you by a preponderance of evidence, you should find the fourth issue, `No.'"
The prayers for instruction presented by the defendants were as follows:
"That if you believe from the evidence, and so find, that the widow of W. A. Owens and his heirs-at-law, after they became of age, have ratified the action of A. J. Owens, it is equivalent to a prior command, and has the same effect as if they had all been of full age, and had made the rescission themselves, under the maxim, `omnis ratihabitio retrotrahitur,et mandato priori aequiparatur.'"
Plaintiffs moved for a new trial, c., as follows:
Motion to set aside verdict as to fourth issue and for new trial, and the grounds thereof:
The jury having returned their verdict, answering the first three issues "Yes," and the fourth issue "Yes, all of them," the plaintiffs moved to set aside the finding of the jury as to the fourth issue, upon the grounds:
(290) 1. That this issue, which was tendered by defendants and submitted to the jury under the objections and exceptions of plaintiffs, was not a proper or necessary issue in this case.
2. That if it was a proper issue, there was no evidence, or not sufficient evidence, (taking all the evidence in the case,) to authorize or justify the jury in their finding, and that the finding of the jury upon this issue, was contrary to the evidence in the case and the law, as asked by both plaintiffs and defendants, and as charged by the Court; that the finding of the jury upon this issue is: "Yes, all of them," that is, that Priscilla Owens, the widow of W. A. Owens, and all the children of W. A. Owens, had ratified the attempted rescission of the sale of the lands in controversy by A. J. Owens and Uriah H. Phelps in 1861, when the plaintiff Stanly Owens and Ed. L. Owens were minors, under twenty-one years old, when this action was commenced, and Julia Lineberry was married to her husband, the plaintiff Lineberry, when she was only eighteen or nineteen years old, and when, as plaintiff alleges, there is no evidence, or none such as to authorize the finding of the jury as to any of the plaintiffs.
3. That as this issue was not a proper issue, no evidence should have been received in its support. *Page 263 
4. That the Court erred in allowing Stanly Owens to testify under objection and exception by plaintiffs, that "we did not receive $250; don't remember exact sum; according to my best recollection it was $180. This suit was then pending." This was said as to the consideration of Fannie Williams, who purchased the estate of the original plaintiffs, there being no issue as to this matter, and it was only calculated to prejudice the plaintiffs' case.
5. That the Court erred in allowing the following question and answer thereto, under the objection of plaintiffs: "State what you and your brothers and sisters did in regard to the Phelps debt;" as it already appeared to the Court, that witness was under twenty-one years of age when this action was commenced, and that his testimony as to his brother and sisters was only hear say, and it also appearing that (291) they were all minors at that time.
For these reasons the plaintiffs moved for a new trial and a venire denovo of this issue, and the several motions of plaintiffs being disallowed, they appealed.
The exceptions are in our opinion untenable, for the reasons we proceed to state.
1st Exception. The defendants assert that the plaintiffs ratified and took the fruits of the arrangement made between the personal representative and the vendor Phelps. It was therefore a subject of inquiry, and the issue was necessary in order that the jury might pass upon the disputed fact.
2d Exc. As to the existence of any evidence, or its sufficiency to warrant the verdict.
1. That there was evidence produced, is conceded in the plaintiffs' prayer for instructions at the conclusion of which, they say the jury should be charged, that, "if defendants have not so satisfied you by apreponderance of evidence, you should find the fourth issue `No.'" The preponderance has reference to ratification by each, after attaining full age and when not under coverture. This is an admission that there was some evidence proper for the jury to consider and pass upon.
2. No instruction was asked that there was no evidence to sustain the affirmative, and no objection made on this ground until after verdict.
3. As to its reasonable sufficiency to authorize the finding. This was matter fit to be urged upon the Judge to induce him to set aside that finding and re-open the inquiry, as within the discretion (292) confided to him, and his decision is conclusive. *Page 264 
3rd Exc. This objection is substantially that already examined.
4th Exc. The reception of the evidence set forth in this exception, given by W. S. Owens, (Stanly Owens), one of the intestate's heirs, and examined for the defendants.
The facts of his testimony are so vaguely set out, and the objection to it not pointed, that we are unable to appreciate the force of the objection. We cannot see why it is incompetent.
The testimony embraced in the objection, was to show that in fact the moneys paid to the administrator on the rescinding of the contract, were in fact spent by their mother and acting guardian in the tuition of the intestate's children. It was an appropriation to their use, and being by them so known strengthens the evidence of their subsequent ratification. The fact testified to, is not itself a ratification, but as explanatory of what occurred after attaining full age, seems admissible, and this independently of the fact of infancy then existing, brings to the knowledge of such as were aware of the source from which the funds came thus used, information of the moneys so received being thus used for their benefit.
There is no error.
No error. Affirmed.
Cited: Main v. Field, 144 N.C. 308; Brown v. Ruffin, 189 N.C. 266;Gaskins v. Mitchell, 194 N.C. 277; Colt Co. v. Barker, 205 N.C. 172.