CHRISTOPHER L. RUDD, Minor, by his next friend, C. C. RUDD v. WALTER E. STEWART and MELVILLE DAIRY, INC.

(Filed 16 June, 1961.)

1. **Automobiles § 46½—**

   The refusal of the court to submit the issue of contributory negligence in submitting the issues upon defendant's counterclaim will not be held for error, the matter being determinable upon the issue of negligence submitted in the issues upon plaintiff's cause of action.

2. **Trial § 40—**

   It is the duty of the trial court to submit such issues as are necessary to settle the material controversies arising upon the pleadings, but with-

in the limitations of this requirement the form and number of issues rests in the sound discretion of the trial court.

**3. Automobiles § 8—**

In making a left turn, a motorist is required to give either the hand signal or a mechanical or electrical signal, but is not required to give both, G.S. 20-154(b).

**4. Trial § 35—**

A charge correctly stating and pointing out the provisions and requirements of a pertinent statute cannot constitute an expression of opinion by the court upon the evidence.

**5. Trial § 37—**

An exception on the ground that the court misstated the contentions of appellant will not be sustained when the error is not called to the attention of the court in time to afford opportunity for correction.

**6. Automobiles § 46—**

Where excessive speed and failure to maintain a proper lookout are permissible inferences from the evidence, exceptions to the charge on the ground that the court should not have charged the law in regard thereto cannot be sustained.

**7. Automobiles § 25—**

The operation of a motor vehicle in excess of the speed limits prescribed by G.S. 20-141(b) is negligence *per se*, and G.S. 20-141(e), prescribing that the inability of a motorist, travelling at a lawful speed, to stop within the radius of his lights should not constitute negligence *per se*, is not applicable when there is evidence that the motorist was exceeding the statutory speed limit and the question of ability to stop before hitting a vehicle on the highway is not involved in the action.

APPEAL by plaintiff from *Olive, J.*, December Regular Civil Term 1960 of CASWELL.

This is a civil action instituted by Christopher L. Rudd, a minor, by his next friend, C. C. Rudd, against Walter E. Stewart and Melville Dairy, Inc., to recover for personal injuries and damage to his 1953 Ford automobile as a result of a collision between the automobile of the plaintiff and the truck of the defendant corporation, the truck being driven at the time by the defendant Stewart.

The defendants filed answers and set up counterclaims against the plaintiff, the defendant Stewart for personal injuries and the corporate defendant for damages to its truck and other property.

It was stipulated that defendant Stewart at the time of the collision was the agent, servant and employee of defendant Melville Dairy, Inc., and at the time was engaged in the business of his master.

The accident occurred on 5 March 1959, about 9:30 a.m. The plaintiff, a resident of Caswell County, North Carolina, was proceeding

towards Burlington, North Carolina, on the State Highway leading from Union Ridge to Burlington. When the plaintiff arrived at or near the entrance to the driveway leading to the residence of G. S. Kernodle, the plaintiff's motor vehicle was involved in a collision with a 1958 Chevrolet truck owned by the defendant corporation and being driven by defendant Stewart in the same direction the plaintiff was traveling.

Plaintiff's evidence tends to show that approximately one thousand feet north of the point of accident Stewart entered the Union Ridge Road from the West on the Stoney Creek Road; that Stewart turned right and proceeded in a southerly direction ahead of plaintiff Rudd. Plaintiff testified that he saw Stewart about 250 or 300 yards ahead of him, and that he came up behind him and followed him to the crest of the hill, and seeing his way clear for about a half mile or more, blew his horn when two or three car lengths behind Stewart, and pulled over to the left lane to pass; that just as he was approaching the entrance to the driveway of the Kernodle residence and started to pass, at a speed of about 50 miles per hour, Stewart pulled his truck slightly to the right of the highway and suddenly turned directly across the highway to his left in front of him (Rudd) to enter the Kernodle driveway and was hit head-on by Rudd's car on the left rear of the truck. Rudd was knocked unconscious and sustained personal injuries which required eleven days' confinement in hospital.

On cross-examination the plaintiff testified: "I was about 250 to 300 yards from the truck when I first saw it. * * * I was coming up-hill when I came up behind the truck. The truck was approximately 75 yards from the Kernodle driveway; the truck did not go over the knoll and out of my sight; you could see part of the truck * * *. At the time I was three or four car lengths behind the truck as it went over the knoll, I was driving around 40 miles per hour * * *. I speeded up to go past the truck * * *. I didn't pay much attention to the truck's speed at that time — it was traveling around 35 miles an hour — it might have slowed some; I didn't pay much attention to it until it swerved off and started pulling over. * * * At the time * * * I was maybe two and a half car lengths from it, 35 feet, approximately. * * * (T)he speed of the truck when it turned in front of me was 15 or 20 miles an hour. * * *I don't think I had time to put on my brakes * * *. I had been traveling the road where the accident occurred for some time, and I was fairly familiar with it."

The defendants' evidence tends to show that Stewart saw the car driven by Rudd about the time he entered the Union Ridge Road from Stoney Creek Road; Rudd's car was north of the intersection, about one thousand feet behind the car driven by a Mr. Page. Stoney

Creek Road intersects the Union Ridge Road in a valley between two hills. Stewart did not see these cars again until he reached the top or crest of the hill. At that time the Page car was in front. It is about 350 feet from the crest of the hill to the driveway of the Kernodle residence. Stewart testified: "I had my left-turn signal on before I crested the hill. I slowed down to approximately 5 miles an hour and made a left turn into the G. S. Kernodle driveway * * *. As I made the left turn, I looked in my mirror; I could only see the hill * * *. I got the cab of the truck, the door, the opening, across the driveway ditch, the back wheels were still on the road when Mr. Rudd hit me; the rear wheel back to the back of the truck was struck. The truck turned over and landed in a ditch south of the driveway toward Burlington. I did not hear any signal given by the Rudd car; there was no horn blown."

Mr. Page testified that he was operating his car 50 to 55 miles an hour; that Rudd passed him about a quarter of a mile from the scene of the accident; that he (Page) continued to drive at the same speed and was in the valley when the collision occurred. He said: "I did not hear the collision; I was down at the intersection * * * of Stoney Creek Road."

The State Highway Patrolman, who arrived at the scene of the accident very shortly after it occurred, testified that the plaintiff's car left skid marks for a distance of 84 feet north of the point of impact on the left-hand side of the highway; that it is approximately 400 feet from the intersection of Stoney Creek Road to the crest of the hill. This witness further testified that the "speed limit on the Union Ridge Road at the time of the accident was 55 * * *."

Mrs. G. S. Kernodle testified: "I was hanging up clothes on the line, I had heard the milk truck out at the road; then I heard a car coming down the road and it was making a lot of fuss, sounded like it was going fast. I * * * have no idea how fast it was going, though. It was going toward Burlington. I remember hearing the tires squeak and then the collision. * * *"

The following issues were submitted to the jury and answered as indicated.

"1. Was the plaintiff injured and his automobile damaged by the negligence of the defendants? Answer: No.

"2. Did the plaintiff by his own negligence contribute to his injury and damage, as alleged in the answer: Answer: _____.

"3. What amount, if any, is the plaintiff entitled to recover of the defendant for (a) personal injuries; (b) damage to automobile? Answer: (a) for personal injuries _____.
              (b) for damage to automobile _____.

"4. Was the defendant Walter E. Stewart injured and the Melville Dairy, Inc. damaged by the negligence of the plaintiff, as alleged in the answers: Answer: Yes.

"5. What amount, if any, is the defendant Walter E. Stewart entitled to recover of the plaintiff: Answer: $565.00.

"6. What amount, if any, is the defendant Melville Dairy, Inc. entitled to recover of the plaintiff? Answer: $2,000.00."

From the judgment entered on the verdict the plaintiff appeals, assigning error.

*D. Emerson Scarborough for plaintiff.*
*Sanders & Holt for defendants.*

DENNY, J. Assignments of error Nos. 1 and 2 are to the submission of the issues set out hereinabove and the refusal of the court below to submit the issues tendered by the plaintiff.

The issues tendered by the plaintiff did not include an issue as to the contributory negligence of the plaintiff, as alleged in the answers, but it did include issues as to the contributory negligence of defendant Stewart on his counterclaim and as to defendant Stewart as agent and servant of the corporate defendant on its counterclaim for the recovery of damages to its truck and contents. The plaintiff in his reply to the counterclaims of the defendants alleged contributory negligence on the part of Stewart, the driver of the corporate defendant's truck.

We think, however, the issues submitted were adequate for the determination of the issues raised by the pleadings. When the jury found that the plaintiff had failed to establish actionable negligence against the defendants, and answered the first issue in the negative, in our opinion, the plaintiff was not prejudiced by the failure of the court to submit issues of contributory negligence as to the defendants on their counterclaims.

"Ordinarily the form and number of the issues in the trial of a civil action are left to the sound discretion of the judge and a party cannot complain because a particular issue was not submitted to the jury in the form tendered by him. * * * It is the duty of the judge, either of his own motion or at the suggestion of counsel, to submit such issues as are necessary to settle the material controversies arising on the pleadings." *Griffin v. Insurance Co.*, 225 N.C. 684, 36 S.E. 2d 225. *O'Briant v. O'Briant*, 239 N.C. 101, 79 S.E. 2d 252; *Whiteman v. Transportation Co.*, 231 N.C. 701, 58 S.E. 2d 752; *Bailey v. Hassell*, 184 N.C. 450, 115 S.E. 166; *Potato Co. v. Jeanette*, 174 N.C. 236, 93 S.E. 795; *Clark v. Guano Co.*, 144 N.C. 64, 56 S.E. 858, 119

Am. St. Rep. 931; *Burton v. Manufacturing Co.*, 132 N.C. 17, 43 S.E. 480; *Tucker v. Satterthwaite*, 120 N.C. 118, 27 S.E. 45. These assignments of error are overruled.

Assignment of error No. 3 is to the following portion of the charge: "The driver of any vehicle upon the highway before turning from a direct line shall first see that such movement can be made in safety, and when the operation of any other vehicle may be affected by such movement, shall give a signal by any mechanical or electric signal device with which such motor vehicle is equipped, or by giving a signal indicating his intention to turn by extending hand and arm from and beyond the left side of the vehicle when making a left turn — hand and arm horizontal, forefinger pointing. You will note * * * that either of those signals may be given, it does not require both."

The appellant points out in his brief that the specific error in the above portion of the charge is the following portion thereof: "You will note * * * that either of those signals may be given, it does not require both," and cites and relies upon *Ervin v. Mills Co.*, 233 N.C. 415, 64 S.E. 2d 431.

The facts in the *Ervin* case are easily distinguishable from those in the instant case. In the *Ervin* case the defendant testified that he did not look in his rear mirror; that he did not give a turn signal for the distance required by statute; that he did not see the plaintiff's motorcycle approaching from the rear when he had an unobstructed view for 700 to 800 feet; and further, the evidence tended to show that defendant's driver did not make a proper turn but "angled in," and did not pass to the right of the center of the mill driveway before turning left. The *Ervin* case simply holds that giving a statutory signal does not relieve a driver from exercising due care in other respects. However, there is nothing in the statute or in our decisions that require under any conditions that a hand signal and a mechanical or electrical signal shall both be given before making a left turn. The statute, G.S. 20-154 (b), among other things, provides: "The signal herein required shall be given by means of the hand and arm in the manner herein specified, or by any mechanical or electrical signal device * * *."

In the instant case, the defendants' evidence is to the effect that Stewart turned on his left-turn signal before he reached the crest of the hill; that he slowed down to approximately five miles per hour and looked in his rear mirror and could not see anything but the hill. At five miles per hour the corporate defendant's truck would have been moving only seven feet per second, while the plaintiff's automobile, according to plaintiff's testimony, was traveling 74 feet per second at the time of the collision. Therefore, his car at this speed

traveled from the crest of the hill to the point of collision in slightly less than five seconds. The appellant contends that, by instructing the jury that a signal indicating an intent to turn may be given by means of the hand and arm in the manner specified in the statute or by any mechanical or electrical signal device, but that the statute does not require both, could be construed by the jury as an expression of an opinion on the evidence by the court. This contention is untenable. Pointing out the provisions and requirements of a pertinent statute does not constitute an expression of opinion on the evidence. This assignment of error is overruled.

Appellant's assignment of error No. 4 is to the portion of the charge in which the trial judge gave the contentions of the defendants. There is nothing in the record to indicate that the appellant interposed any objection to the statement of the contentions at the time, or called the court's attention to any misstatement therein. It has been repeatedly and universally held by this Court that an assignment of error based on an exception to statements in the charge giving the contentions of the parties, and not called to the attention of the court at the time they are made, in order to give the court an opportunity to make a correction of any erroneous statement made therein, will not be upheld. *S. v. Spivey,* 230 N.C. 375, 53 S.E. 2d 259; *S. v. McNair,* 226 N.C. 462, 38 S.E. 2d 514; *Steele v. Coxe,* 225 N.C. 726, 36 S.E. 2d 288; *Manufacturing Co. v. R.R.,* 222 N.C. 330, 23 S.E. 2d 32; *S. v. Wagstaff,* 219 N.C. 15, 12 S.E. 2d 657; *S. v. Hobbs,* 216 N.C. 14, 3 S.E. 2d 431.

Assignment of error No. 5 is directed to the following portion of the charge: " * * * (I)f you are satisfied by the greater weight of the evidence that the plaintiff was driving at a speed that was not reasonable and prudent under the circumstances, or driving at a speed in excess of 55 miles an hour, and that the speed limit was 55 miles an hour there, or was not keeping a proper lookout, or that he didn't give any signal that he was going to pass and that he was negligent in one of these matters, or negligent in any other way, and you are so satisfied by the greater weight of the evidence, and if you are further satisfied by the greater weight of the evidence that such negligence was a proximate cause of injury and damage to the defendant Stewart and damage to Melville Dairy, Inc. property, and you are so satisfied by the greater weight of the evidence, it would be your duty to answer the fourth issue YES. * * *"

The appellant argues and contends that the foregoing instruction was prejudicial error for the reason that there is no evidence tending to show that he was exceeding the speed limit, or that he was operating his car in a careless or reckless manner, or that he did not have his

car under proper control, or that he was not keeping a proper lookout. He says and contends in his brief that at the time of the collision he "was going downgrade, and the fact that his skid marks were only 84 feet long would indicate that he had his car under proper control and was not speeding." The evidence with respect to the plaintiff's speed, and whether or not he had his car under control and was keeping a proper lookout at the time of the collision, constituted questions of fact for the determination of the jury.

The plaintiff further contends that the last quoted portion of the charge is prejudicial for the further reason that the court failed to charge the jury that the plaintiff's alleged failure to give an audible warning by his horn or other warning device before passing or attempting to pass the defendant would not constitute negligence or contributory negligence in itself, although the same may be considered with other facts in the case in determining whether the plaintiff was guilty of negligence or contributory negligence, citing G.S. 20-149 (b).

The appellant apparently overlooked the fact that the court had already charged exactly what he now contends it erroneously failed to charge. In connection with the above portion of the charge, we do not approve of the underlined portion thereof, set out hereinbelow, to wit, " * * * (I)f you are satisfied by the greater weight of the evidence that the plaintiff was driving at a speed that was not reasonable and prudent under the circumstances, or driving at a speed in excess of 55 miles an hour * * * or was not keeping a proper lookout, or that he didn't give any signal that he was going to pass, and that he was negligent in one of these matters, *or negligent in any other way* * * *." However, the appellant does not challenge the correctness of the charge on this ground. Consequently, the assignment of error will not be upheld.

Appellant's assignment of error No. 6 challenges the correctness of the following excerpt of the charge. "If you come to the fourth issue and find from the evidence, not by its greater weight but simply find from the evidence that the plaintiff was driving his automobile carefully, cautiously and lawfully, and was not negligent in any manner, it would be your duty to answer it NO, or if you find from the evidence that the plaintiff was operating his automobile carefully there, cautiously and lawfully, that he was operating it at a reasonable and prudent speed under the circumstances and was not exceeding the speed limit and that he was keeping a proper lookout; and that he was not negligent in any manner, it would be your duty to answer this issue NO; or, if you are satisfied by the greater weight of the evidence that the plaintiff was negligent, but you are not satisfied by the greater weight of the evidence that such negligence was a

proximate cause of injury and damage to the defendant Stewart and damage to Melville Dairy, Inc. property, it would be your duty to answer the fourth issue NO."

The only argument in support of this assignment of error is that it requires the jury to find the plaintiff negligent if he were exceeding the 55 miles per hour speed limit at the time of the accident. He argues that under the provisions of G.S. 20-141 (e) exceeding the speed limit is not negligence *per se.* The cited statute is not applicable to the factual situation in this case. The statute provides in subsection (e) thereof, Cumulative Supplement 1959, " * * * that the failure or inability of a motor vehicle operator who is operating such vehicle within the maximum speed limits prescribed by G.S. 20-141 (b) to stop such vehicle within the radius of the lights thereof or within the range of his vision shall not be considered negligence *per se* or contributory negligence *per se*  in any civil action, but the facts relating thereto may be considered with other facts in such action in determining the negligence or contributory negligence of such operator."

The operation of a motor vehicle in excess of the applicable limits set forth in G.S. 20-141 (b) is negligence *per se. Stegall v. Sledge,* 247 N.C. 718, 102 S.E. 2d 115; *Norfleet v. Hall,* 204 N.C. 573, 169 S.E. 143; *Albritton v. Hill,* 190 N.C. 429, 130 S.E. 5.

The reasons stated are insufficient to sustain this assignment of error and it is overruled.

Other assignments of error have been carefully considered and, in our opinion, they present no error sufficiently prejudicial to require the disturbing of the verdict and judgment from which the appeal is taken.

No error.